IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PARADISE CONCEPTS, INC, ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 20-2161 |
| : | |
| THOMAS W. WOLF, ET AL. : | |
| : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                       **OCTOBER 5, 2021**

      As the COVID-19 pandemic swept the nation in March of 2020, many state officials, including Pennsylvania Governor Tom Wolf, instituted programs and orders to curb the spread of the virus and keep their citizens safe. One such program was the Business Closure Order in Pennsylvania, which required all "non-life sustaining" businesses to close. Governor Wolf also implemented a Waiver Program that allowed non-life sustaining businesses to apply for a waiver. A waiver allowed businesses to continue in-person operations. This matter arises as a result of three businesses that applied for and were denied waivers. Notably, other businesses similar to Plaintiffs' were granted waivers. Because of their waiver denials, Plaintiffs were forced to close. They contend that the Waiver Program infringed on their constitutional rights. Defendants now bring a Motion for Summary Judgment (ECF No. 30), principally arguing that Eleventh Amendment immunity and mootness require judgment in their favor. Plaintiffs also bring a Cross Motion for Summary Judgment (ECF No. 34), requesting judgment on the Equal Protection claim. Since there is no ongoing violating conduct by Defendants, Defendants' Motion will be granted, and Plaintiffs' Motion will be denied.

**I.  BACKGROUND**

The pertinent facts of this case were laid out in our August 31, 2020 Memorandum and Order granting in part and denying in part Defendants' Motion to Dismiss. Those facts are as follows:

> On March 19, 2020, in response to the COVID-19 pandemic, Defendant, Governor Wolf, issued an executive order "regarding the closure of all businesses that are not life sustaining." (SAC ¶ 10 & Ex. A, ECF No. 4.) That same day, Defendant Rachel Levine, Secretary of the Pennsylvania Department of Health, issued a similar order. (Id. ¶ 14 & Ex. B.) These orders effectively closed all non-life sustaining businesses in Pennsylvania. (*See id*. ¶¶ 10-17 & Exs. A & B.)
>
> The following day, Governor Wolf issued a press release explaining that non-life sustaining business could seek a waiver from the March 19 business closure orders from the Department of Community and Economic Development ("DCED"). (*Id*. ¶ 18 & Ex. C.) The press release provided that "a team of professionals at DCED [would] review each request and respond based on the guiding principle of balancing public safety while ensuring the continued delivery of critical infrastructure services and functions." (*Id*. Ex. C.)
>
> Over 42,000 non-life sustaining businesses applied for waivers and nearly 7,000 were granted, including a waiver for Governor Wolf's family business, Wolf Home Products. (*Id*. ¶¶ 22-23.) On April 3, 2020, before DCED had processed all of the waiver requests that it received, Governor Wolf ended the waiver program. (*Id*. ¶ 24.) Governor Wolf, Secretary Levine, and DCED Secretary Dennis Davin were responsible for enforcing and implementing the waiver program. (*Id*. ¶¶ 25-26.)
>
> On April 28, 2020, Defendant Kalonji Johnson, Commissioner of the Pennsylvania Bureau of Professional and Occupational Affairs ("BPOA"), issued "guidance for appraisers, notaries, title companies, and home inspectors," related to real estate transactions during the pandemic. (*Id*. ¶ 27 & Ex. D.) According to this guidance, appraisers, notaries, title companies, and home inspectors could operate regardless of the business closure orders, but only with respect to homes that were under contract before March 18, 2020. (*Id*. ¶ 29.) The guidance also permitted appraisers, notaries, title companies, and home inspectors to perform in-person activities, such as showings, appraisals, and inspections, as long as the participants wore masks, gloves, and foot coverings. (*Id*. ¶ 30.)
>
> Plaintiff Kenwood Pools operates a retail store in Levittown, Pennsylvania. It sells pool and spa chemicals, filtration systems, heat pumps, gas heaters, pool toys, and maintenance equipment. It also offers swimming pool services. (*Id*. ¶¶ 32-33.) Kenwood Pools complied with the March 19 business closure orders, but eventually learned that two of its nearby competitors, LA Pools and Spa and Leslie's Pool

> Supplies and Service Repairs, had obtained waivers. (*Id.* ¶¶ 36-40.) Like Kenwood Pools, LA Pools and Leslie's Pool Supplies operate retail locations and sell pool products. (*Id.* ¶ 38.) Leslie's Pool Supplies is three miles from Kenwood Pools and LA Pools is 20 miles from Kenwood Pools. (*Id.* ¶ 40.) Despite the similarities among these businesses, when Kenwood Pools attempted to obtain a waiver, its request was denied without explanation. (*Id.* ¶¶ 41-42.)
>
> Plaintiff WIN Home Inspection, of Elizabethtown, Pennsylvania, also applied for a waiver. Although WIN's competitor, Trimmer Home Inspections, obtained a waiver, WIN's request for a waiver was denied. WIN and Trimmer are ten miles from one another and serve the same customers. (*Id.* ¶¶ 43-47.)
>
> Plaintiff MQRE, a Philadelphia realtor, opted not to request a waiver because it thought that doing so would be futile. It eventually learned, however, that another realtor, just blocks away, received a waiver. (*Id.* ¶¶ 48-51.)

*Paradise Concepts, Inc. v. Wolf*, 482 F. Supp 3d, 365, 368-69 (E.D. Pa. 2020). Based on these facts, Plaintiffs brought substantive due process and equal protection claims against Governor Wolf and other Pennsylvania officials in May of 2020.[1] In our August 31, 2020 Memorandum and Order, we dismissed Plaintiffs' substantive due process claims. *Id*. at 369, 371-72.

Defendants now seek judgment on the remaining equal protection claim (ECF No. 30. Plaintiffs also seek judgment on this claim. (ECF No. 34).

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will

---

[1] Thomas W. Wolf, Governor of the Commonwealth of Pennsylvania, Rachel Levine, M.D., Secretary of the Pennsylvania Department of Health, Kalonji Johnson, Commissioner of the Pennsylvania Bureau of Professional and Occupational Affairs, and Dennis M. Davin, of the Pennsylvania Department of Community and Economic Development, are the four named Defendants in this matter.

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). The presence of "a scintilla of evidence in support of the [non-moving party] will be insufficient" to carry the case to trial. *Id*. at 252. Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact is genuinely . . . disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

When a court is faced with cross-motions for summary judgment, "[t]he rule is no different." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is

rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id*. (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

### III.    DISCUSSION

Defendants move for summary judgment on multiple grounds: Eleventh Amendment immunity, mootness, and the merits of Plaintiffs' equal protection claim. Plaintiffs move for summary judgment on the merits of their equal protection claim. For the reasons set forth below, summary judgment will be granted in favor of Defendants, and against Plaintiffs. This lawsuit is barred by Eleventh Amendment immunity and the mootness doctrine. There is no ongoing conduct by the Defendants to be enjoined, and any dispute that might have existed between the parties no longer presents a live case or controversy. Since both Eleventh Amendment immunity and the doctrine of mootness require dismissal of Plaintiffs' claim, we need not address the parties' arguments regarding the merits of the Equal Protection claim.

####    A.    **Eleventh Amendment Immunity**

First, Defendants assert that Eleventh Amendment immunity bars this lawsuit and strips the Court of subject matter jurisdiction.

#####        *1.    Applicable Law*

The assertion of immunity under the Eleventh Amendment challenges the court's subject matter jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). Eleventh Amendment immunity presents one of the "threshold barriers to federal court review of a controversy." *Silver v. Court of Common Pleas of Allegheny Cty.*, 802 F. A'ppx. 55, 58 (3d Cir. 2020). Because a determination of whether subject matter jurisdiction exists must be made before the merits of a case are considered, the issue of immunity under the Eleventh Amendment

must be considered first.  *Tagayun v. Lever & Stolzenberg*, 239 F. App'x. 708, 710 (3d Cir. 2007).

The Eleventh Amendment of the United States Constitution provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment has been interpreted by courts to mean that States are immune from suits brought against them in federal courts by private parties.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

There are several exceptions to these general rules, however.  First, a state may waive its immunity and consent to suits in federal court, which moots their Eleventh Amendment immunity.  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 (3d. Cir. 1996).  Moreover, Congress may abrogate a states' Eleventh Amendment immunity.  *Id*.  Finally, a federal court may enjoin state officials to conform their future conduct to the requirements of federal law.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte young*, 2019 U.S. 123 (1908)).  In other words, cases may be brought against state officials when those cases request prospective injunctive or declaratory relief for ongoing violations of federal law.  This exception does not allow courts to declare that state officers have violated federal law in the past.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  The purpose of this exception ensures that state officials cannot employ the Eleventh Amendment in order to avoid compliance with federal law.  *Id*.  To determine if this exception applies, "the court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md. Inc., v. PSC*, 535 U.S. 635, 645 (2002).

        2.    *Application*

Plaintiffs assert that this case falls under the third exception to Eleventh Amendment immunity: the *Ex parte Young* exception. There is no dispute that Plaintiffs are requesting prospective declaratory and injunctive relief to conform the state officials' future conduct to federal law. For this exception to exempt Defendants from immunity under the Eleventh Amendment, the Plaintiffs must also allege "an *ongoing* violation of federal law." *Verizon*, 535 U.S. at 645 (emphasis added). Here, there is no ongoing conduct on behalf of the Defendants that violates federal law.

The Waiver Program, which is the basis for Plaintiffs' lawsuit, is no longer in place and Defendants have certified that it will not return. (1/29/21 Robinson Dec. ¶ 7-8, 9, ECF No. 30(2).) This program began on March 19, 2020 in response to the rapidly spreading COVID-19 pandemic and only operated until April 3, 2020. (*Id*. at ¶ 7.) After April 3, 2020, no additional waiver submissions were accepted, and the waivers only remained relevant so long as counties remained in the "Red Phase" of the reopening plan. (*Id*. at ¶ 7-8.) While counties remained in the Red Phase, businesses were required to operate (or not operate) in accordance with the Business Closure Orders and the Waiver Program. However, once counties entered the Yellow or Green phases, the Waiver Program no longer impacted which businesses could resume in-person activities. (*Id*. at ¶ 8.) No counties have been in the Red Phase since July of 2020 and no businesses have been required to obtain a waiver to operate since that time. (*Id*. at ¶ 8.) The Defendants certify that the Waiver Program in effect during that time "will not return under any circumstances." (*Id*. at ¶ 9.) If there is ever a determination that a county must return to the Red Phase, a new waiver system would be developed and implemented, rather than re-implementing the one at issue here. (*Id*. at ¶ 9.)

Because the Waiver Program as it existed in March and April of 2020 will never return, it is now obsolete. The evidence submitted in this matter shows that the Program was an emergency system put into place during desperate times and will not be instituted again, even if the pandemic persists or worsens. In the event that a similar shutdown is again needed, Defendants have certified that a new program will be developed and implemented. Plaintiffs argue that because the Waiver Program is only "suspended," it could be re-implemented at any time. However, Plaintiffs have provided no evidence that contradicts Robinson's sworn declaration stating that this is not the case.

Another district court in the Third Circuit has reached a similar result in a similar dispute. In *County of Butler v. Wolf*, the court held that declaratory relief is not the proper remedy to challenge the Waiver Program, as it is not a live dispute. 2020 U.S. Dist. LEXIS 93484, at *11-12 (W.D. Pa. May 28, 2020). The court reasoned that the waiver program was closed, and that no new waivers were being granted. In addition, the court explained that the plaintiffs sought a "declaration from the court that Defendants' *prior conduct* in the manner in which they gave, or withheld, waivers violated constitutional rights." *Id*. Ultimately, the court held that "those violations [were] in the past, even if the damages incurred from the denial of a waiver may be ongoing." *Id*. at 12. Therefore, the challenge of the Waiver Program in that matter could not proceed forward either.

For the same reasons, the alleged violating conduct in this case is not ongoing. Therefore, Eleventh Amendment immunity shields the Defendants, and strips this court of subject matter jurisdiction. The motion must be denied.

### B.     Mootness

Defendants also argue that Plaintiffs' claims are moot. While we have determined that Eleventh Amendment immunity applies, we will nevertheless consider the mootness arguments.

#### 1.     *Applicable Law*

Article III limits the power of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id*. A case is moot when there is no effective relief for the district court to grant. *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016).

One exception to the mootness doctrine is when the offending action is "capable of repetition yet evading review." This exception is very narrow and applies only where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017). There must be more than a theoretical possibility of the action occurring against the complaining party again – it must be a *demonstrated probability*. *Murphy v. Hunt*, 455 U.S. 478, 479 (1982).

#### 2.     *Application*

Defendants contend that this case is moot. Plaintiffs respond that the "voluntary cession" exception applies here because Defendants could reimplement the Waiver Program at any time if the pandemic worsens. Even assuming, arguendo, that the first element of this exception is met

9

here—that the challenged action is too short in duration to be fully litigated—the alleged conduct fails to meet the second prong. For this exception to mootness to apply, there must be more than a "theoretical possibility" of Defendants reimplementing the program – it must be a "demonstrated probability." *Id*. There has been no "demonstrated probability" or even a "reasonable expectation" that Defendants would reimplement *this* waiver program, even if a county in Pennsylvania returns to the Red Phase. Defendants have affirmed that the Waiver Program will not return under any circumstances. If a waiver program is again needed, it would be a separate and different wavier program. Therefore, the mootness doctrine applies to this action.

Plaintiffs, in essence, ask the Court to give an advisory opinion about a hypothetical future dispute. The Court cannot award declaratory or injunctive relief to hypothetical actions or programs that *might* be implemented sometime in the future. That is the very reason that doctrines such as Eleventh Amendment immunity and mootness exist. *See United States v. Thomas*, 713 F.3d 165, 168 (3d Cir. 2013) ("A judicial decision rendered in the absence of a case or controversy is advisory, and federal courts lack power to render advisory opinions."); *see also Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *P.R. Aqueduct & Sewer Auth.,* 506 U.S. at 146 (holding that federal courts may not simply declare that state officers have violated federal law in the past). If some counties in Pennsylvania do return to the Red Phase and a new waiver program is implemented, if a Plaintiff is in fact affected by it, Plaintiff could then bring a separate complaint to challenge those separate actions. However, with regard to this matter and these actions, this Court lacks jurisdiction and Plaintiffs' claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted, and Plaintiffs' Cross Motion for Summary Judgment will be denied. An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**
